UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ERIN MAUREEN O'LEARY,**

       **Plaintiff,**                        **CIVIL ACTION NO. 11-14052**

       **vs.**                                **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 8) be denied, Defendant's motion for summary judgment (docket no. 10) be granted, and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 2, 2009, alleging disability beginning February 15, 2006. (TR 168-78). The claims were denied and Plaintiff filed a timely request for a *de novo* hearing. On December 7, 2010 Plaintiff appeared with counsel in Southfield, Michigan and testified before Administrative Law Judge (ALJ) Susanne Lewald. (TR 31-51). Vocational Expert (VE) Harry Cynowa also appeared and testified at the hearing. In a December 22, 2010 decision the ALJ determined that Plaintiff was not disabled because she retained the ability to perform a significant number of jobs that exist in the national economy. (TR 17-26). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3).

The parties filed cross motions for summary judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was twenty-nine years old on her alleged disability onset date. She obtained a GED and attended Schoolcraft College for two years where she took courses in the veterinary technician program but did not receive a diploma. (TR 34-35, 201). Plaintiff's past employment includes work shelving books in a library. (TR 41). She has also worked as a bartender, hostess/cashier, as a newspaper loader/delivery person, receptionist, and veterinary technician. (TR 47-48, 197).

Plaintiff testified that she has been hospitalized two times since 2007 for bipolar disorder and depression. (TR 36). She states that she sometimes hears voices or sees things that other people don't hear or see. (TR 46). She claims that her mental limitations make it difficult for her to remember things in order. (TR 41). She also claims that she has engaged in violent or destructive behavior in the sense that she has thrown objects like a toaster. (TR 46). Plaintiff testified that she has back problems that prevent her from lifting or bending. (TR 40-41). She testified that she received physical therapy for her back which did not help and epidural injections which provided only short term relief. (TR 44).

Plaintiff testified that during her typical day she sits a lot, watches television, and eats. (TR 36). She states that she does not read or participate in hobbies. Plaintiff reports that she sleeps five to six hours per night and does not take naps. (TR 37). She was unsure what medications she has been prescribed, but she reports that she did not take any medications in the two days preceding the hearing. (TR 37). Plaintiff reports that she can only concentrate on a task for a few minutes at a

2

time before she needs to stop. (TR 38). She eats three meals per day, makes simple meals, does not require assistance bathing, and cleans her own apartment. (TR 38-39). Plaintiff has a driver's license and is able to drive to her parents' home or to the store. She testified that she does her own shopping once every one to two weeks. (TR 39).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed the medical evidence and will summarize limited portions of the record below primarily as it pertains to Plaintiff's mental impairments. The record shows that Plaintiff has a history of lumbar disc herniation, lumbar disc degeneration, and spondylolisthesis. Her back pain was reportedly treated with chiropractic sessions in or around 2000 or 2001 and with epidural injections. (TR 310, 477). One report indicates that Plaintiff received physical therapy as well. (TR 354). An x-ray of the lumbar spine dated February 2009 demonstrated cholelithiasis, but otherwise normal curvature, vertebral body height, and intervertebral disc space with no fracture or subluxation. (TR 304-05). A May 2009 MRI of the lumbar spine revealed degenerative discs at L3-L4, L4-L5, and L5-S1, with a right sided disc bulge at the L3-L4 level that was causing foraminal stenosis. (TR 332, 477-78). Plaintiff was instructed that if she started a good exercise program, lost weight, and stayed active it was likely that her back pain would go away. The record shows that Plaintiff was prescribed Vicodin and Naproxen for back pain, along with Xanax. (TR 338).

Plaintiff voluntarily admitted herself to St. John Detroit Riverview Behavioral Health Center for inpatient psychiatric care from January 26 through January 29, 2007. (TR 420-34). On admission Dr. Nagy Kheir diagnosed Plaintiff with bipolar disorder type I, mixed episode and assigned a GAF of 25. Plaintiff complained of racing thoughts. Her mother reported that she was

3

acting violent and bizarre, she was throwing objects and eggs at the family, and she had threatened to kill them. The discharge summary states that Plaintiff's hospital stay was unremarkable. She acted appropriately and did not exhibit any bizarre behavior, agitation, or irritability. On discharge, Plaintiff's condition was stable, she was cooperative, pleasant, had a fair frustration tolerance, and fair insight and judgment. She was assigned a GAF of 45 to 50.

On January 30, 2007 Plaintiff was transported to the emergency room following a domestic dispute with her mother. (TR 265-79). Plaintiff was cooperative, anxious, and reportedly upset with her living situation. She had recently been diagnosed with bipolar disorder and had not been taking her medications. She reportedly had a history of alcoholism, but she had not had a drink for more than six months. (TR 270). The behavioral medicine triage form states that Plaintiff had anger management issues and would benefit from grief support and inpatient psychiatric treatment. (TR 275-76). Plaintiff was assessed as bipolar with psychosis.

Plaintiff was admitted to St. John Detroit Riverview Behavioral Health Center for inpatient psychiatric care from January 31, 2007 through February 5, 2007. (TR 391-93). At the time Plaintiff blamed her mother for her being there, but admitted that she believed the phones were being interfered with and her food was being poisoned. Plaintiff reportedly had been vulgar with her family and physically aggressive toward her mother. She indicated that her father had passed away one month prior. (TR 404). The report states that Plaintiff showed average intelligence and cognition, and had an intact memory. She was pleasant and competent, but preoccupied and paranoid. Plaintiff was observed to be psychotic, paranoid, delusional, labile and loud, with loose associations. (TR 397). She was diagnosed with schizoaffective disorder, acute; rule out bipolar disorder mixed with psychotic features, acute; alcohol dependence in remission; and assigned a GAF

of 20. On discharge, Plaintiff was reportedly calmer and showed much improvement in the areas of agitation, psychosis, mood swings, tearfulness, and anger. (TR 397). In addition, Plaintiff was much more coherent. Her mental status on discharge was described as calm, pleasant, euthymic, not agitated, and cheerful. (TR 397). She was discharged in stable condition with a one week supply of Risperdal and a recommendation that she follow up with the Community Mental Health Clinic.

Plaintiff was transported to the emergency department at St. Mary Mercy Hospital on March 28, 2009 after an argument with her mother. (TR 250-59). The nursing assessment states that Plaintiff has a history of bipolar disorder and panic attacks. She reported a history of depression for two and one half years following the death of her father in January 2007, and she claimed she had anxiety and poor thoughts but no delusions. The report states that Plaintiff had recently started taking Abilify and was concerned that it was not helping as she still had "highs and lows." (TR 250-51). The nursing assessment reports that Plaintiff was calm, appropriate, cooperative, able to participate in two-way communication, and capable of following simple commands. The behavioral medicine triage report indicates that Plaintiff had good insight and judgment. (TR 259).

Plaintiff received treatment from Dr. Shabana Ahmed, a psychiatrist, at the Lincoln Behavioral Services. (TR 460). She presented on March 5, 2009 seeking medication for her bipolar disorder and reported that she had been off medications for over one year. (TR 326). Plaintiff was diagnosed with schizoaffective disorder, assessed with a GAF of 45, and was started on Abilify. (TR 327). A treatment note dated June 25, 2009 states that Plaintiff's depression and anxiety were much improved. (TR 322). A May 2009 report states that Plaintiff was feeling a lot better. She reported that her depression was improving, she denied hearing voices or seeing visions, and she was

compliant with her medications. (TR 323). Plaintiff was prescribed Abilify, Lamictal, Lexapro, and Xanax. (TR 460).

On October 2, 2009 Dr. Terrance Mills and Suzann Kenna, LLP completed a mental status evaluation after examining Plaintiff on behalf of the state disability determination service. (TR 338-40). The report states that Plaintiff had been living at home with her parents since 2006. She was charged with a DUI and felonious assault against her boyfriend in 2007, and she had been in physical altercations with her mother. The report states that Plaintiff had paranoid thoughts that someone was following her. She was taking medication with positive results, but she did not want to take the medication. The clinicians noted that Plaintiff was in contact with reality, her motivation was good, her speech was logical and organized, and she was oriented in three spheres. They noted that Plaintiff denied having hallucinations or delusions, and she was not as paranoid as she once had been. They also noted that Plaintiff was irritable and easily angered especially at her mother, and she was suspicious of the intentions of others. Plaintiff could repeat seven numbers forward and six backward, recall two of three objects after a three minute delay, and perform serial sevens to 65. The clinicians opined that Plaintiff was able to understand but due to psychosis and mood swings she was too unstable to work. They noted that Plaintiff could be violent and destructive when she does not take her medication. The clinicians diagnosed Plaintiff with schizoaffective disorder, bipolar type and assigned a GAF of 40. (TR 340).

On November 3, 2009 Rose Moten-Solomon, Ph.D. completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. (TR 53, 372-89). Dr. Moten-Solomon found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no

episodes of decompensation. (TR 382). She found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. In all other respects, Dr. Moten-Solomon determined that Plaintiff was not significantly limited. The doctor found that Plaintiff retained the mental capacity to engage in simple work activity. (TR 384, 388).

Plaintiff was hospitalized at the Madison Behavioral Health Services Facility at the Detroit Medical Center from June 3, 2010 through June 10, 2010 with complaints of depression, suicidal thoughts, insomnia, family problems, and impulsive and aggressive behavior. (TR 461). She was provided with individual and group therapy and treated with Abilify, Celexa, Lamictal, and Trazodone. The discharge summary reports that Plaintiff made slow and steady progress with the combination of medications, her moods became stable, depression lifted, she was no longer suicidal, and she wanted to go home. Plaintiff's mother made arrangements for Plaintiff to move out of the family home and into an apartment which pleased Plaintiff. (TR 462). Plaintiff was discharged with a final diagnosis of bipolar disorder, depressed; depressive disorder; personality disorder; back problems; a GAF of 60, and a recommendation that she follow up at the Community Mental Health Clinic.

 **IV.    VOCATIONAL EXPERT TESTIMONY**

The Vocational Expert (VE) testified that Plaintiff's past work as a bartender was classified as light semi-skilled work; past work as a hostess/cashier and newspaper loader/delivery person constituted light unskilled work; past work as a library attendant was light skilled work; past work

as a veterinary technician was medium skilled work, although performed at a light exertional level by Plaintiff; and past work as a receptionist was sedentary semi-skilled work. (TR 47-48).

The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who can sit for six hours in an eight hour work day; stand and walk four hours in an eight hour work day; lift up to fifteen pounds occasionally but not repetitively; and perform simple, repetitive tasks which require occasional postural changes and limited public interaction. (TR 48). The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform unskilled work at the light exertional level, including work as a hand packager, small products assembler, and visual inspector checker, comprising 6,000 jobs in the Southeastern Michigan Regional labor market. (TR 49).

Next, the ALJ asked the VE to consider an individual who in addition to the above limitations was limited to jobs that did not require production work. (TR 49). The VE testified that this individual was capable of performing the same jobs as previously listed. If the person also had a twenty percent deficit in concentration, persistence, or pace they would not be capable of competitive full-time employment. (TR 49-50).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since February 15, 2006, and suffered from the severe impairments of schizoaffective disorder and degenerative disc disease of the lumbar spine, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 19-21). The ALJ determined that Plaintiff was unable to perform her past relevant work but retained the residual functional capacity (RFC) to perform light work consisting of simple, repetitive tasks, limited public

interaction, and no production work. In addition, she was limited to sitting for six hours in an eight hour work day, standing and/or walking four hours in an eight hour work day, lifting up to fifteen pounds occasionally but not repetitively, with occasional postural activities. (TR 21-24). The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from February 15, 2006, the alleged onset of disability, through December 22, 2010, the date of the ALJ's decision because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (TR 25-26).

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

## C.     Analysis

Plaintiff argues that the ALJ's decision denying her benefits is not supported by substantial evidence.  She contends that the ALJ should have found that she was disabled based on her

testimony and on medical evidence that she had impairments in concentration and memory, and based on the VE's testimony that a twenty percent concentration deficit would preclude work. Plaintiff also argues that the ALJ improperly weighed the opinions of Dr. Terrance Mills and Dr. Shabana Ahmed. She further contends that the evidence shows that she was unable to function socially when she was not properly medicated. She claims that all of this evidence combined indicates that she was moderately restricted in concentration, persistence, or pace which would preclude her from full-time employment under the VE's testimony.

*1.    Assessment of Treating and Examining Physician Opinions*

The undersigned will first address Plaintiff's claim that the ALJ failed to properly assess the opinions of examining physician Dr. Mills and treating physician Dr. Ahmed. It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It is equally as well-settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). "Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the

case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Ahmed without providing a rational basis. Instead, she contends that the ALJ should have found that Plaintiff was disabled based on Dr. Ahmed's opinion in combination with the VE's testimony that a twenty percent concentration deficit would be work preclusive. (Docket no. 8 at p. 5-6).

The opinion to which Plaintiff refers is a May 6, 2010 letter signed by Dr. Ahmed that states that Plaintiff "continues to struggle to manage her symptoms which include racing thoughts, mood swings, anxiety, and irritability which impact her ability to maintain employment." (TR 460). The ALJ addressed this letter in her opinion and concluded that Dr. Ahmed's assessment was consistent with her opinion and fully accounted for in the RFC. The ALJ observed that the RFC incorporated work-related mental limitations that restricted the type of work Plaintiff was capable of performing. (TR 23). Specifically, the RFC accounted for Plaintiff's mental limitations by restricting her to simple repetitive tasks with no production work and limited public interaction. Rather than discounting Dr. Ahmed's opinion, the ALJ found Dr. Ahmed's opinion to be consistent with the findings in her opinion. Plaintiff's contention that the ALJ improperly assessed Dr. Ahmed's opinion is not accurate.

Next, Plaintiff argues that the ALJ erred in failing to adopt Dr. Mills' October 2009 opinion in which he opines that Plaintiff was "too unstable to work." The ALJ considered this opinion and attributed no weight to it after concluding that it was vague and not supported by the mental status

testing. Indeed, Dr. Mills' report shows that Plaintiff was oriented in three spheres, her speech was logical and organized, and she was in contact with reality. He found that Plaintiff was able to repeat seven numbers forward and six backward, name several past Presidents, five large cities, current famous people, and when asked to identify a current event responded "Health Care Bill." (TR 339-40). Dr. Mills' report also shows that Plaintiff was able to perform serial sevens to 65, she could identify the similarities and differences of several named objects, and she showed appropriate abstract thinking and judgment. He found that her motivation was good and she was neatly dressed and groomed. Despite all of this, he opined that Plaintiff was too unstable to work. The ALJ found that Dr. Mills' conclusion was vague and not consistent with the mental status testing.

A statement by a medical source that the claimant is unable to work does not mean the ALJ is required to find that the claimant is disabled. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). The ALJ considered Dr. Mills' opinion and gave good reasons for discounting the opinion. The fact that she attributed no weight to the opinion was not erroneous in this case.

*2.     Assessment of Plaintiff's Credibility*

Plaintiff next argues that the ALJ failed to properly assess Plaintiff's credibility. The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of the witness. *See Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993).

A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is

13

> the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

<u>Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996)</u>. The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

<u>Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. at 34486.</u>

Here, the ALJ reviewed the evidence and found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. The ALJ discussed a number of specific instances in which the claimant's allegations were inconsistent with the evidence of record. Plaintiff argues that her inconsistent statements were simply caused by the fact that a fair amount of time had passed between the filing of the application and the date of the hearing. While this may be true to some extent, the ALJ was still entitled to compare Plaintiff's testimony to other evidence of record and discount Plaintiff's credibility where she found contradictions. *Walters*, 127 F.3d at 531-32. In doing so, the ALJ was permitted to consider all of the evidence, including any testimony or reports contained in the record that described the household or other activities Plaintiff was capable of performing. *Id*. at 532. The ALJ did not rely on any one

factor, but instead cited multiple examples where Plaintiff's testimony was in some way inconsistent with other evidence of record. The ALJ then noted that the inconsistencies may not have been caused by a conscious intention to mislead, but that they nevertheless tended to show that Plaintiff may not be entirely credible. While Plaintiff may disagree with the ALJ's conclusion, her findings were proper and are supported by substantial evidence.

3.   *Evidence Showing Concentration and Memory Impairments*

Plaintiff contends that her testimony, coupled with the VE's testimony and evidence submitted during the administrative hearing in Exhibits 5E and 1F, provide proof of an impairment in Plaintiff's concentration and memory that is work preclusive. The undersigned has previously discussed the fact that the ALJ found Plaintiff to be less than fully credible. Therefore, further discussion of the weight attributed to Plaintiff's testimony will not occur.

Plaintiff asserts that evidence contained in medical records from Plaintiff's emergency treatments at St. Mary Mercy Hospital (exhibit 1F, TR 250-94), and statements she made in her Adult Function Report (exhibit 5E, TR 223-30), show that she had concentration and memory impairments. She contends that this evidence in combination with her testimony and the testimony of the VE constitutes evidence of a disabling condition.

A review of the evidence to which Plaintiff points reveals that while it may offer some support for a disability finding, it also supports the conclusion reached by the ALJ. The ALJ considered the evidence contained in exhibits 5E and 1F and cited to it several times throughout her opinion. The ALJ determined that the evidence suggested that Plaintiff has moderate deficits in concentration, persistence, or pace. (TR 20). The ALJ then noted that this same evidence revealed that Plaintiff was able to repeat seven digits forward and six backward, and she could spell the word

15

"world" backward. (TR 20). Although the ALJ's opinion could have been more detailed with regard to this issue, the ALJ's decision is supported by substantial evidence in the record. The records to which Plaintiff points show that she was able to concentrate on television shows throughout much of her day, read, complete household chores like vacuuming, laundry, and dishes, shop for food and clothing, drive, ride a bicycle, use a checkbook, handle a savings account, play the guitar, and draw. (TR 223-30). She was described as cooperative, able to follow simple commands, and carry on a conversation. (TR 251). The ALJ considered the totality of the evidence and concluded that while Plaintiff had moderate difficulties in concentration, persistence, or pace, she was not completely disabled and precluded from full-time work. The ALJ 's conclusion is supported by substantial evidence in the record and should not be disturbed.

Next, Plaintiff contends that her inability to function socially is well documented in the record. She claims that this deficit is brought on by her inability to maintain her medication regimen because of her psychological and emotional difficulties. She also points out that she has required hospitalization as a result of her aggressive behavior when not properly medicated.

The record contains evidence to show that Plaintiff suffers from violent and aggressive outbursts when she is off her medications. It also shows that she has been off her medications at various times throughout the years. However, the evidence shows that each of these aggressive episodes has been directed toward family members, mostly her mother, or her boyfriend. There is no evidence in the record to suggest that Plaintiff has ever been counseled, disciplined, or fired for being verbally or physically aggressive or violent toward a co-worker, supervisor, or customer at any job she has held. In situations involving non-family members, Plaintiff has been described as being irritable and moody, but also pleasant, cooperative, and appropriate.

The ALJ considered the evidence and found that Plaintiff had moderate impairments with regard to her ability to function socially. (TR 20). The ALJ opined that Plaintiff has been described as isolative, aggressive and withdrawn when not taking her medications. She also observed that Plaintiff has been described as calm, cooperative, and pleasant, and noted that Plaintiff visits with a friend, has lunch periodically with her mother, and was able to sustain multiple employments in 2007.

"[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without justifiable excuse." *Pate–Fires v. Astrue,* 564 F.3d 935, 945 (8th Cir. 2009) (citation and internal quotation marks omitted). Here, the ALJ recognized that Plaintiff was not always compliant with her medications and exhibited negative behavior as a result. Specifically, the ALJ noted that Plaintiff's two psychiatric hospitalizations occurred when Plaintiff was noncompliant with her medication regimen. (TR 20). The ALJ also noted that the record shows that Plaintiff experiences racing thoughts, impaired concentration, insomnia, paranoia, impulsiveness, suicidal ideation, irritability and aggressiveness when she is off her medications. (TR 22). However, the ALJ did not base his denial on the fact that Plaintiff was noncompliant with her prescribed regimen. Instead, the ALJ discussed evidence showing that Plaintiff's symptoms are greatly diminished when she is medication compliant. (TR 23).

The ALJ recognized that Plaintiff has some functional limitations, and more so when she is off her medications, but noted that Plaintiff had long periods of time where the record did not show psychiatric treatment. While the failure to seek treatment may be simply another symptom of the disorder itself, *White v. Comm'r*, 572 F.3d 272, 283 (6th Cir. 2009) (citation omitted), the ALJ did

17

not simply rely on the fact that Plaintiff did not seek treatment. Instead, the ALJ observed that during these extended periods, Plaintiff was able to sustain multiple employment situations and engage in substantial gainful activity which suggested that her mental health symptoms were under control. The ALJ concluded that the evidence was inconsistent with disabling levels of symptoms.

Here, as is true in many cases, the evidence is capable of supporting more than one conclusion. The ALJ reviewed the evidence of record and made findings that were supported by substantial evidence in the record. It is not within the Court's authority to reverse ALJ findings when they are supported by substantial evidence in the record simply because record evidence also exists to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (discussing the zone of choice within which the Commissioner can act without fear of court interference).

*4.     Conclusion*

The undersigned has considered the parties' arguments in total and finds that the ALJ properly assessed Plaintiff's credibility, gave good reasons for the weight she afforded to the opinions of Dr. Mills and Dr. Ahmed, and properly assessed the evidence as a whole with regard to Plaintiff's limitations in concentration, persistence, or pace and social functioning. She crafted an RFC that is supported by substantial evidence and posed accurate hypotheticals to the VE that took into consideration Plaintiff's credible limitations. The ALJ then based her conclusion that Plaintiff was capable of performing jobs within the national economy on substantial evidence in the record. The undersigned recommends that Plaintiff's motion for summary judgment be denied and Defendant's cross motion granted.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: January 23, 2013         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 23, 2013                        s/ Lisa C. Bartlett
                                               Case Manager